The undersigned have reviewed the Award based upon the record of the proceedings before the Deputy Commissioner.
The appealing party has shown good grounds to reconsider the evidence. However, upon reconsideration of the evidence, the undersigned reach the same facts and conclusions as those reached by the Deputy Commissioner. Neither party here requested the Full Commission to receive further evidence or to rehear the parties or their representatives. The Full Commission, in their discretion, have determined that there are no good grounds in this case to receive further evidence or to rehear the parties or their representatives, as sufficient convincing evidence exists in the record to support their findings of fact, conclusions of law, and ultimate order.
Accordingly, the Full Commission find as fact and conclude as matters of law the following, which were entered into by the parties as
STIPULATIONS
1. That on January 8, 1990, the parties were bound by and subject to the North Carolina Workers' Compensation Act.
2. On said date(s) the employer-employee relationship existed between the parties.
3. As of said date(s) Liberty Mutual Ins. Co. provided the coverage to the employer as provided under said Act.
4. That the last day the plaintiff worked for the defendant-employer was January 8, 1990.
5. On said date the plaintiff was earning an average weekly wage to be determined from a North Carolina Industrial Commission Form 22, Wage Scale Chart, which has been stipulated by the parties, which wage is $200.47.
6. That the issues to be determined in this case are:
a. Has the plaintiff sustained an injury by accident arising out of and in the course of her employment with the defendant-employer in the nature of an occupational disease as a result of said employment; and,
b. If so, to what compensation is the plaintiff entitled under the Act.
7. The parties further stipulate into evidence approximately 200 pages of medical and personnel records and MSDS sheets and also including a summary of said records, which is not stipulated but not objected to.
At the hearing on October 15, 1991, the parties introduced the following exhibits:
1. Plaintiff's Exhibit 1A, marked P1A, consisting of a daily maintenance check list.
2. Plaintiff's Exhibit 4, marked P4, consisting of a store chemical inventory.
3. Plaintiff's Exhibit 5, marked P5, consisting of a North Carolina Industrial Commission Form 25P.
4. Plaintiff's Exhibit 6, marked P6, consisting of Defendant's Responses to Pre-hearing Interrogatories to Defendants.
5. Plaintiff's Exhibit 7, marked P7, consisting of OSHA's Hazard Communication Standard.
6. Plaintiff's Exhibit 8, marked D8, consisting of OSHA's Hazard Communication Standard, Training Outline.
7. Defendants' Exhibit 1, marked D1, consisting of Plaintiff's Response to Defendants' Interrogatories.
8. Defendants' Exhibit 2, marked D2, consisting of a diagram of the defendant's store prior to May 3, 1989.
9. Defendants' Exhibit 3, marked D3, consisting of a diagram of the defendant's store subsequent to May 3, 1989.
Subsequent to the initial hearing on October 15, 1991, the parties entered the following documentation into the record:
1. Deposition of Mitchell Freedman, M.D. dated December 6, 1991.
2. Deposition of T. Reginald Harris, M.D. dated October 30, 1991.
3. Deposition of Allan D. Lieberman, M.D. dated December 11, 1991.
* * * * * * * * * * *
The Full Commission adopt as their own all findings of fact found by the Deputy Commissioner, as follows:
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
FINDINGS OF FACT
1. Prior to January 8, 1990, the plaintiff was employed by the defendant-employer for approximately ten years as a housekeeping maid.
2. That the plaintiff, in carrying out the duties of her employment over the approximate ten years she worked for the defendant-employer, was required to use her hands repetitively in scrubbing and dusting and in the operation of a vacuum cleaner and to use commercial cleaning agents containing toxic and hazardous chemicals such as petrochemicals and hydrazide.
3. On or about July 25, 1989, the plaintiff began to experience various physical symptoms which affected her ability to perform her work duties such as, in part, weakness of arms and legs, shortness of breath, lack of coordination and dizziness, unsteadiness on her feet, deterioration in her short-term memory, numbness and tingling of her hands.
4. Although the plaintiff's symptoms increased in severity, she continued to carry out the duties of her employment until January 8, 1990, when she was physically no longer able to perform her duties, and the defendant- employer was unable to provide her with work which she could perform in light of her physical problems.
5. Since July 25, 1989, the plaintiff has been medically treated, examined and diagnosed by several physicians.
6. The continuous scrubbing, dusting and operation of a vacuum cleaner over the ten years of her employment with the defendant-employer is repetitious use of the plaintiff's hands in excess to that to which the general public is normally exposed and is a significant contributor to the bilateral carpal tunnel syndrome from which the plaintiff suffers.
7. The plaintiff has sustained the occupational disease of carpal tunnel syndrome in both hands arising out of and in the course of the employment with the defendant-employer.
8. The exposure of the plaintiff to commercial cleaning products containing toxic and hazardous substances such as petrochemicals and hydrazide over the ten years of plaintiff's employment with the defendant-employer was in excess of that of the general public during the ten years of her employment with the defendant-employer and significantly contributed to the neurotoxicity secondary to chronic toxic chemical exposure.
9. The plaintiff has sustained the occupational disease of neurotoxicity secondary to toxic chemical exposure arising out of and in the course of the employment with the defendant-employer.
10. The dust level and nature of dust to which the plaintiff was exposed during the ten years she worked for the defendant-employer was not such as would cause obstructive lung disease and was not more than that to which the general public would be exposed outside the work place.
11. On January 8, 1990, the plaintiff was earning an average weekly wage of $200.47.
12. The plaintiff is 49 years of age, has a high-school education and has always worked as a domestic or housekeeper.
13. The plaintiff's symptoms and physical condition have not improved since January 8, 1990 when she ceased being exposed to the work environment provided by the defendant-employer, the repetitive hand movements and the toxic and hazardous chemicals.
14. In her present physical condition, the plaintiff is unable to work and is not employable.
* * * * * * * * * * *
Based upon the competent and convincing evidence adduced at the hearing, the undersigned make the following additional
CONCLUSIONS OF LAW
1. During the course and scope of her employment with the defendant-employer, the plaintiff contracted the occupational diseases of bilateral carpal tunnel syndrome and neurotoxicity secondary to toxic chemical exposure.
2. The plaintiff is totally disabled and entitled to receive total disability compensation benefits at the rate of $133.65 per week commencing January 8, 1990 until such time as she shall no longer be disabled or become gainfully employed. G.S. 97-29.
3. The plaintiff has not contracted the occupational disease of obstructive lung disease during the course and scope of her employment with the defendant-employer.
* * * * * * * * * * *
Based upon these conclusions of law, the Full Commission have determined there exists no basis for amending the Award. Accordingly, the foregoing stipulations, findings of fact, and conclusions of law engender the following:
AWARD
1. The defendants shall pay to the plaintiff, commencing January 8, 1990, permanent total disability compensation benefits for the rest of her life or until such time as she shall no longer be disabled or become gainfully employed at the rate of $133.65 per week, less the attorney fee hereinafter provided.
2. The defendants shall pay all present and future medical expense resulting from said injury when the same have been presented to the Commission through the carrier and approved by said Commission.
3. An attorney fee of twenty-five percent of the compensation above allowed is hereby approved and awarded to J. Jefferson Newton for his services to the plaintiff to be deducted from the compensation above-provided and paid directly to said attorney with respect to the compensation accrued to date and by paying every fourth weekly benefit check directly to said attorney with respect to future payments.
4. The defendants shall pay the costs.
This the __________ day of _____________________ 1994.
 S/ _________________________ J. HOWARD BUNN, JR. CHAIRMAN
CONCURRING:
S/ _________________________ JAMES J. BOOKER COMMISSIONER
DISSENTING (SEE ATTACHED)
S/ _________________________ W. JOEY BARNES DEPUTY COMMISSIONER
JHB/nwm